LEVI LUBARSKY & FEIGENBAUM LLP

1185 Avenue of the Americas, 17th Floor

New York, New York 10036

Telephone: (212) 308-6100

Facsimile (212) 308-8830

Howard B. Levi, Esq.

Gail R. Zweig, Esq.

*Attorneys for FLHI Liquidation Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | Case No. 08-11363 (RDD) |
| OLD DELAWARE JEWELS INC., <u>et al.</u>, | : | Chapter 11 |
| Debtors. | : | |

------------------------------------------------------------- x

| | | |
|---|---|---|
| FLHI LIQUIDATION TRUST, | : | Adv. Proc. No. |
| Plaintiff, | : | |
| -against- | : | |
| R. ESMERIAN, INC. and RALPH ESMERIAN, | : | |
| Defendants. | : | |

------------------------------------------------------------- x

<u>COMPLAINT</u>

Plaintiff FLHI Liquidation Trust (the "Trust"), for its Complaint against R.

Esmerian, Inc. ("REI") and Ralph Esmerian ("Esmerian"), respectfully alleges as follows:

<u>NATURE OF THE ACTION</u>

1.     This is an adversary proceeding brought pursuant to sections 105, 544,

547, 548, 549 and 550 of title 11 of the United States Code (the "Bankruptcy Code") and rules

7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") arising

from the transfer of money and inventory received by defendants from the debtors in the above-caption cases, Calypso Mines LLC ("Calypso"), Tango LLC ("Tango"), Endymion, LLC ("Endymion"), Foxtrot LLC ("Foxtrot"), Old Delaware Jewels Inc. f/k/a Fred Leighton Holding, Inc. ("FL"), Old New York Jewels LLC f/k/a Fred Leighton LLC ("FL New York"), Phoenix Nevada 1, LLC ("FL Nevada") and Old Hills Jewels LLC f/k/a Fred Leighton BH LLC ("FL California") (collectively, the "Debtors").

2.      Defendants used their positions as insiders of the Debtors to extract over $41,473,435.40 in money and property from the Debtors to the detriment of the Debtors and their creditors.

3.      Plaintiff seeks a judgment (i) avoiding the transfers of the property of the Debtors that are the subject of this action; (ii) directing the recovery of the property of the Debtors that was transferred or the value of such property; and (iii) directing Defendants to turn over, deliver and transfer to Plaintiff (a) the property of the Debtors described in this complaint that remains in their possession and control, or (b) the proceeds of any sale, consignment or other transfer of any such property of the Debtors, as well as the difference between the fair market value of any such property that was sold and the actual sale prices of such property, to the full extent allowable by law.

<u>BACKGROUND</u>

4.      On April 15, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.      Pursuant to the Bankruptcy Court's order entered on April 18, 2008, the

Debtors' cases were consolidated for procedural and administrative purposes only pursuant to Bankruptcy Rule 1015(b).

6.      Shortly after the Petition Date, on April 30, 2008, the Bankruptcy Court issued the Interim Order Authorizing Use of Cash Collateral that was subsequently continued and supplemented by other interim cash collateral orders entered by the Court (collectively, the "Cash Collateral Order"). In addition, on April 30, 2008, the Court issued the Interim Order Authorizing (a) Maintenance of Pre-Petition Bank Accounts, (b) Use of Cash Management, (c) Use of Business Forms and Granting Related Relief, which was also subsequently continued and supplemented by additional cash management orders entered by the Court (collectively, the "Cash Management Order").

7.      In substance and in part, the Cash Collateral Order and Cash Management Order, among other things, (a) imposed requirements on the deposit and maintenance of each Debtors' Cash Collateral (as defined therein); (b) circumscribed the authority of the Debtors to use Cash Collateral; and (c) restricted the transfer of Cash Collateral of the Debtors to any non-Debtor.

8.      On October 30, 2009, the Debtors and Merrill Lynch Mortgage Capital Inc. filed with the Court the parties' First Amended Joint and Consolidated Plan of Reorganization and Liquidation (the "Amended Plan").

9.      On November 9, 2009, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. § 1129(a) and (b) and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming First Amended Joint and Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Confirmation Order").

10.     The Effective Date of the Amended Plan occurred on November 10, 2009.

11.     The Trust is the Liquidation Trust established pursuant to Section 7.10 of the Amended Plan.

12.     Pursuant to the Confirmation Order, all Causes of Action defined in the Amended Plan as

> any and all actions, proceedings, causes of action, suits, demands, rights to legal remedies, rights to equitable remedies, rights to payment and Claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity or otherwise, of the Debtors or their Estates, existing as of the Effective Date, unless otherwise waived or released by the Debtors or the Plan Administrator, including, without limitation, any of the foregoing arising under sections 542, 543, 544, 547 through 551, and 553 of the Bankruptcy Code

were transferred to the Trust.  Confirmation Order ¶ 33.

13.     Pursuant to the Confirmation Order, "all Claims against the Debtors asserted or that may be asserted by Esmerian or REI shall be subordinated pursuant to section 510(c) of the Bankruptcy Code to all Allowed General Unsecured Claims, and neither Esmerian nor REI shall receive or retain any property or interest in property on account of such Claims." Confirmation Order ¶ 43.

<u>PARTIES</u>

14.     Plaintiff Trust is a New York trust, with a principal place of business at 12 Upper Mountain Avenue, Montclair, New Jersey.  As set forth above, pursuant to the Amended Plan, all claims and causes of action of the Debtors are vested in the Trust.

15.     Upon information and belief, defendant REI is a New York corporation with its principal place of business at 610 Fifth Avenue, New York, New York.  Upon information and belief, Esmerian is the president and majority shareholder of REI, and at all

relevant times stated herein, exercised complete dominion and control over REI.

16.     Upon information and belief, defendant Esmerian resides at 1001 Park Avenue, New York, New York.

JURISDICTION AND VENUE

17.     This adversary proceeding arises in and relates to the Bankruptcy Cases filed by each of the Debtors on the Petition Date.

18.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

19.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

20.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a) because this proceeding arises in and is related to the Bankruptcy Cases pending in this District.

FACTS

Relationship between the Debtors and the Defendants

21.     The Debtors are a collection of related entities that were owned and controlled by Esmerian and REI.  The principal assets held by each of the Debtors were high-end jewelry items and jeweled objects.

22.     More specifically, Esmerian was the Chairman and owner of 100% of the stock of FL, and indirectly, 100% of the membership interests in FL's subsidiaries, FL New York, FL California and FL Nevada.  In addition, Esmerian owned 100% of the membership interests in Endymion and Foxtrot, and 99% of the membership interest in Calypso.

23.     REI owned 100% of the membership interest in Tango.

<u>Defendants' Involvement in Debtors' Pre-Petition Financing</u>

24.     In 2005 and 2006, Merrill Lynch Mortgage Capital Inc. ("Merrill Lynch") extended two term loans and a working capital revolving loan facility to certain of the Debtors totaling approximately $177 million (collectively, the "Special Collection and Acquisition Loans").

25.     The first term loan was made to Calypso (the "Special Collection Loan") and closed on November 4, 2005.  In connection with the Special Collection Loan, on or about November 4, 2005, Esmerian contributed 101 items of high-end jewelry items to Calypso.  On or about January 9, 2006, Esmerian contributed an additional 6 items of jewelry to Calypso.  These 107 items of jewelry make up what is also known as the "Special Collection."

26.     As collateral for the Special Collection Loan, Merrill Lynch received a perfected first priority security interest in all of the current and future assets of Calypso, including the Special Collection.

27.     As additional collateral for the Special Collection Loan, on or about November 4, 2005, Esmerian, on behalf of REI, also granted a negative pledge to Merrill Lynch of approximately $30 million of jewelry (the "Negative Pledge Jewelry").

28.     On January 5, 2006, Esmerian, on behalf of REI, contributed approximately $10 million of the Negative Pledge Jewelry to Tango, and such jewelry became subject to a negative pledge by Tango to Merrill Lynch.

29.     Subsequently, Merrill Lynch provided (a) a second term loan to FL for the purpose of acquiring the Fred Leighton retail jewelry stores, including all inventory thereof, and (b) a revolving line of credit for working capital purposes (collectively, the "Acquisition Loan"). The Acquisition Loan closed on March 29, 2006.

30.     As collateral for the Acquisition Loan, Merrill Lynch received a perfected first priority security interest in all of the assets of FL, FL New York and FL Nevada, including all current and future inventory of the Fred Leighton retail stores.

31.     In connection with the Acquisition Loan, Esmerian, on behalf of REI, contributed the remaining $20 million of Negative Pledge Jewelry to Tango (in addition to the $10 million of Negative Pledge Jewelry that was previously contributed to Tango in January 2006). Esmerian, on behalf of REI, also contributed approximately $10 million of additional jewelry. Thus, in March 2006, Tango owned approximately $40 million of jewelry. As collateral for the Acquisition Loan, Merrill Lynch received a perfected first priority security interest in all of the current and future assets of Tango.

32.     Also in connection with the Acquisition Loan, and pursuant to a March 22, 2006 resolution, Esmerian contributed approximately $28 million of jewelry to Endymion. As collateral for the Acquisition Loan, Merrill Lynch received a perfected first priority security interest in all of the current and future assets of Endymion.

33.     On the closing date of the Acquisition Loan, the Acquisition Loan and the Special Collection Loan were cross-collateralized. Accordingly, all of the collateral securing the Acquisition Loan also secures the Special Collection Loan, and all of the collateral securing the Special Collection Loan also secures the Acquisition Loan.

34.     On or about April 6, 2007, Esmerian contributed approximately $33 million of jewelry to Foxtrot. In consideration for Merrill Lynch's waiver of certain defaults and breaches under the loan documentation relating to the Special Collection and Acquisition Loans and as additional collateral for such loans, Merrill Lynch received a perfected first priority security interest in all of the current and future assets of Foxtrot.

35.     The items owned by Tango and Endymion were listed on schedules to borrowing base certificates that were required to be delivered under the documents that were executed as part of the Acquisition Loan.  The last borrowing base certificate was delivered to Merrill Lynch on October 2, 2007, was dated September 12, 2007, and was current as of August 31, 2007 (the "September 12, 2007 Borrowing Base Report").

36.     Inventory of the Fred Leighton retail stores that had been consigned to third parties was also required to be listed on borrowing base certificates and was listed on schedule II to the September 12, 2007 Borrowing Base Report.  The Debtors also periodically sent to FTI Consulting Inc., Merrill Lynch's financial advisor, lists of all of the inventory of the Fred Leighton retail stores (the "FL Inventory Lists"), including items at the stores as well as items on consignment.

37.     Esmerian, on his own behalf or on behalf of REI, signed the documentation pertaining to the Special Collection and Acquisition Loans, and all amendments and side letters relating thereto, on behalf of the Debtors.

Pre-Petition Transfers by the Debtors to REI

38.     Upon information and belief, on or about the dates set forth on Exhibit A, the Debtors listed as transferors made the pre-petition transfers of cash to or for the benefit of REI listed on Exhibit A, which transfers total $7,072,372.72.

39.     Upon information and belief, on or about the dates set forth on Exhibit B, the Debtors listed as transferors made the pre-petition transfers of the items of jewelry listed on Exhibit B to or for the benefit of REI.

40.     At all relevant times prior to the dates set forth on Exhibit B, the items listed on Exhibit B were the property of the Debtors, and part of the Debtors' bankruptcy estates.

Each of the items listed on Exhibit B had a Debtor Value[1] as set forth on Exhibit B, and the Debtor Value for all of the items of jewelry listed on Exhibit B was $8,155,555.00.

41.     Esmerian knew that each of the items of jewelry listed on Exhibit B was property of the Debtors.  Esmerian also knew that each of the Debtors, which he controlled, had pledged such items of collateral to Merrill Lynch.  Indeed, all of the items listed on Exhibit B were (i) listed on the schedules to the September 12, 2007 Borrowing Base Report; (ii) listed on documentation pertaining to the Special Collection and Acquisition Loans; or (iii) otherwise acknowledged by Esmerian, in sworn testimony, to constitute Debtor Property.

42.     On various dates between September 2007 and January 2008, Tango transferred various items of jewelry valued at $14,867,592.00 to or for the benefit of REI.

43.     On or before February 29, 2008, Endymion transferred items of jewelry valued at $127,500.00 to or for the benefit of REI.

Pre-Petition Transfers by the Debtors to Esmerian

44.     Upon information and belief, on or about the dates set forth on Exhibit C, the Debtors listed as transferors made the pre-petition transfers of cash to or for the benefit of Esmerian listed on Exhibit C, which transfers total $2,622,394.68.

45.     On various dates between September 2007 and January 2008, Endymion transferred items of jewelry valued at $2,740,550.00 to or for the benefit of Esmerian.

Transfers by the Debtors for the Benefit of the Defendants

46.     Upon information and belief, on or about or after March 26, 2008, the items of jewelry listed on Exhibit D were transferred to or for the benefit of Esmerian and/or

_____

[1] "Debtor Value" means (i) a value attributed to certain items by a certain appraiser, Benjamin Zucker, (ii) the established historical cost, or (iii) an estimated cost value where records of historical costs were unavailable.

REI.

47. Upon information and belief, including information prepared by the Debtors, the items of jewelry listed on Exhibit D constituted property of the Debtors that was listed on the FL Inventory Lists. Each such item listed on Exhibit D had a Debtor Value as set forth on Exhibit D, and the total Debtor Value for all of the items of jewelry listed on Exhibit D was at least $598,555.00.

48. Upon information and belief, on or about or after September 12, 2007, the items of jewelry listed on Exhibit E were transferred to or for the benefit of Esmerian and/or REI.

49. Each of the items of jewelry listed on Exhibit E constituted property of the Debtors that was listed on the schedules to the September 12, 2007 Borrowing Base Report. Each such item listed on Exhibit E had a Debtor Value as set forth on Exhibit E, and the total Debtor Value for all of the items of jewelry listed on Exhibit E was $11,233,214.00.

50. Upon information and belief, the items listed on Exhibit F constituted property of the Debtors, which was listed on (i) documentation pertaining to the Special Collection and Acquisition Loans; (ii) schedules to the September 12, 2007 Borrowing Base Report; or (iii) FL Inventory Lists.

51. Upon information and belief, the items of jewelry listed on Exhibit F were transferred by the Debtors to or for the benefit of Esmerian and/or REI.

52. The items of jewelry listed on Exhibit F each had a Debtor Value as set forth on Exhibit F, and the total Debtor Value for all of the items of jewelry listed on Exhibit F was $5,948,492.00.

53. Upon information and belief, on or about September 17, 2007, the items

listed on Exhibit G were transferred to or for the benefit of Esmerian and/or REI.

54. Each of the items of jewelry listed on Exhibit G constituted property of the Debtors that was listed on the September 12, 2007 Borrowing Base Report. Each such item listed on Exhibit G had a Debtor Value as set forth on Exhibit G, and the total Debtor Value for all of the items of jewelry listed on Exhibit G was $280,752.00.

55. Esmerian knew that each of the items of jewelry that is listed on Exhibits D, E, F and G was property of the Debtors, and Esmerian further knew that the Debtors had pledged all such items of jewelry to Merrill Lynch.

Post-Petition Transfers by Debtors for the Benefit of REI

56. On or about August 8, 2008, Endymion transferred $318,240.00 in cash to REI.

57. On or about September 1, 2008, FL New York transferred $62,500.00 in cash to REI.

58. Upon information and belief, on or about the dates set forth on Exhibit H, the Debtors listed as transferors made the postpetition transfers of the items of jewelry listed on Exhibit H to or for the benefit of REI.

59. At all relevant times prior to the dates set forth on Exhibit H, each of the items listed on Exhibit H was the property of the Debtors, and part of the Debtors' bankruptcy estates. Indeed, all of the Endymion, Tango and FL items reflected on Exhibit H were listed on the schedules to the September 12, 2007 Borrowing Base Report. Further, any Calypso and Foxtrot items reflected on Exhibit H were listed on documentation relating to the Special Collection and Acquisition Loan documents. Each of the items on Exhibit H had a Debtor Value as set forth on Exhibit H, and the total Debtor Value for all of the items of jewelry listed on

Exhibit H was $5,562,100.00.

60.     Esmerian knew that each of the items of jewelry listed on Exhibit H was property of the Debtors.  Esmerian also knew that each of the Debtors, which he controlled, had pledged such items of collateral to Merrill Lynch.

FIRST CAUSE OF ACTION
Avoidance of Preferential Transfers Pursuant to 11 U.S.C. § 547(b)

61.     Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

62.     Each of the transfers to REI described in paragraphs 38 through 43 above, including transfers listed on Exhibits A and B, occurring between April 15, 2007 and April 15, 2008 (together, "REI One-Year Insider Transfers"), was made to or for the benefit of REI.

63.     Each of the transfers to Esmerian described in paragraphs 44 and 45 above, including transfers listed on Exhibit C, occurring between April 15, 2007 and April 15, 2008 (together, "Esmerian One-Year Insider Transfers"), was made to or for the benefit of Esmerian.

64.     Each of the transfers to Esmerian and/or REI described in paragraphs 46 through 55 above, including transfers listed on Exhibits D, E, F and G, occurring between April 15, 2007 and April 15, 2008 (together, "Esmerian/REI One-Year Insider Transfers"), was made to or for the benefit of Esmerian and/or REI.

65.     Each of the REI One-Year Insider Transfers, the Esmerian One-Year Insider Transfers, and the Esmerian/REI One-Year Insider Transfers (collectively, "the One-Year Transfers") was made for or on account of an antecedent debt allegedly owed by the Debtor-transferor before such transfer was made.

66.     Each of the One-Year Insider Transfers was made while the Debtor-

transferor was insolvent.

67. Each of the One-Year Insider Transfers was made to an insider of the transferor, i.e., Esmerian and/or REI, on or within one year before the Petition Date.

68. Each of the One-Year Insider Transfers enabled defendants to receive more from the Debtors and their estates than they would have received if the Bankruptcy Cases had proceeded under Chapter 7 of the Bankruptcy Code, the transfers had not been made and the defendants had been paid to the extent permitted by the Bankruptcy Code.

69. By virtue of the foregoing, pursuant to sections 547 and 550 of the Bankruptcy Code, each of the One-Year Insider Transfers should be avoided, recovered and preserved for the benefit of the Debtors' estates.

70. Accordingly, plaintiff seeks judgment avoiding each of the One-Year Insider Transfers, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $41,473,435.40.

SECOND CAUSE OF ACTION
Avoidance and Recovery of Intentionally Fraudulent
Transfers Under 11 U.S.C. §§ 544(b) and 550

71. Plaintiff repeats and realleges paragraphs 1 through 70 as if fully set forth herein.

72. Upon information and belief, each of the transfers described in paragraphs 38 through 43 above, including transfers listed on Exhibits A and B, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of REI's capital investment in a Debtor.

73. Upon information and belief, each of the transfers described in paragraphs 44 and 45 above, including transfers listed on Exhibit C, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of Esmerian's capital investment in a Debtor.

74. Upon information and belief, each of the transfers described in paragraphs 46 through 55 above, including transfers listed on Exhibits D, E, F and G, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of defendants' capital investment in a Debtor.

75. Upon information and belief, each of the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, was a transfer of an interest of one or more of the Debtors in property.

76. Upon information and belief, the Debtors received no consideration for any of the foregoing transfers.

77. When Esmerian caused the Debtors, which he directly or indirectly controled, to transfer the items of property and the sums of cash described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, Esmerian acted with the intent to hinder, delay and defraud Merrill Lynch and unsecured creditors generally by preventing the Debtors from having sufficient cash to satisfy their obligations to Merrill Lynch and unsecured creditors generally.

78. When Esmerian caused the Debtors, which he directly or indirectly controled, to transfer the items of property and sums of cash described in paragraphs 38 through 55, including the transfers listed on Exhibits A, B, C, D, E, F and G, Esmerian acted with the actual intent to delay, hinder and defraud any entity to which the Debtors were or became indebted on or after the date that such transfers were made.

79. By reason of Esmerian's ownership and control of the Debtors at the time of these transfers, Esmerian's fraudulent intent is attributable to the Debtors.

80. Upon information and belief, each of the transfers described in paragraphs

38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, was made by the Debtors solely with the intent to benefit the defendants.

81.     Defendants were the initial and/or immediate or mediate transferees of the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G.

82.     At all times relevant hereto, there were actual creditors of the applicable Debtors holding unsecured claims allowable against the Debtors' estates within the meaning of Sections 502(d) and 544(b) of the Bankruptcy Code. These creditors have the right to void the transfers described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C, D, E, F and G, under applicable law, including, but not limited to, the laws of the State of New York.

83.     By virtue of the foregoing, pursuant to sections 544(b) and 550 of the Bankruptcy Code, the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, should be avoided, recovered, and preserved for the benefit of the Debtors' estates.

84.     Accordingly, plaintiff seeks judgment avoiding the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $35,911,335.40.

THIRD CAUSE OF ACTION
Avoidance and Recovery of Constructively Fraudulent
<u>Transfers Under 11 U.S.C. §§ 544(b) and 550</u>

85.     Plaintiff repeats and realleges paragraphs 1 through 84 as if fully set forth herein.

86. Upon information and belief, each of the transfers described in paragraphs 38 through 43 above, including transfers listed on Exhibits A and B, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of REI's capital investment in a Debtor.

87. Upon information and belief, each of the transfers described in paragraphs 44 and 45 above, including transfers listed on Exhibit C, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of Esmerian's capital investment in a Debtor.

88. Upon information and belief, each of the transfers described in paragraphs 46 through 55 above, including transfers listed on Exhibits D, E, F and G, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of defendants' capital investment in a Debtor.

89. Upon information and belief, each of the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, was a transfer of an interest of one or more of the Debtors in property.

90. Defendants were the initial and/or immediate or mediate transferees of the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G.

91. Upon information and belief, the Debtors received no consideration for any of the foregoing transfers.

92. At all times relevant hereto, there were actual creditors of the applicable Debtors holding unsecured claims allowable against the Debtors' estates within the meaning of Sections 502(d) and 544(b) of the Bankruptcy Code. These creditors have the right to void the transfers described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C, D, E, F and G, under applicable law, including, but not limited to, the laws of the State of New

York.

93. By virtue of the foregoing, pursuant to sections 544(b) and 550 of the Bankruptcy Code, the transfers described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C, D, E, F and G, should be avoided, recovered, and preserved for the benefit of the Debtors' estates.

94. Accordingly, plaintiff seeks judgment avoiding the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $35,911,335.40.

FOURTH CAUSE OF ACTION
(Avoidance and Recovery of Intentionally Fraudulent
Transfers Under 11 U.S.C. §§ 548 and 550)

95. Plaintiff repeats and realleges paragraphs 1 through 94 as if fully set forth herein.

96. Upon information and belief, each of the transfers described in paragraphs 38 through 43 above, including transfers listed on Exhibits A and B, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of REI's capital investment in a Debtor.

97. Upon information and belief, each of the transfers described in paragraphs 44 and 45 above, including transfers listed on Exhibit C, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of Esmerian's capital investment in a Debtor.

98. Upon information and belief, each of the transfers described in paragraphs 46 through 55 above, including transfers listed on Exhibits D, E, F and G, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of defendants' capital investment in a Debtor.

99. Upon information and belief, each of the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, was made on or within two years of the Petition Date.

100. Upon information and belief, the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, were transfers of an interest of one or more of the Debtors in property.

101. Upon information and belief, the Debtors received no consideration for such transfers.

102. When Esmerian caused the Debtors, which he directly or indirectly controlled, to transfer the items of property and the sums of cash described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C, D, E, F and G, Esmerian acted with the actual intent to hinder, delay and defraud Merrill Lynch and unsecured creditors generally by preventing the Debtors from having sufficient cash to satisfy their obligations to Merrill Lynch and unsecured creditors generally.

103. When Esmerian caused the Debtors, which he directly or indirectly controlled, to transfer the items of property and sums of cash described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C, D, E, F and G, Esmerian acted with the actual intent to delay, hinder and defraud any entity to which the Debtors were or became indebted, on or after the date that such transfers were made.

104. By reason of Esmerian's ownership and control of the Debtors at the time of these transfers, Esmerian's fraudulent intent is attributable to the Debtors.

105. Defendants were the initial and/or immediate or mediate transferees of the transfers described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C,

D, E, F and G.

106.　By virtue of the foregoing, pursuant to sections 548 and 550 of the Bankruptcy Code, the transfers described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C, D, E, F and G, should be avoided, recovered, and preserved for the benefit of the Debtors' estates.

107.　Accordingly, plaintiff seeks judgment avoiding the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $35,911,335.40.

FIFTH CAUSE OF ACTION
Avoidance and Recovery of Constructively Fraudulent
Transfers Under 11 U.S.C. §§ 548 and 550

108.　Plaintiff repeats and realleges paragraphs 1 through 107 as if fully set forth herein.

109.　Upon information and belief, each of the transfers described in paragraphs 38 through 43 above, including transfers listed on Exhibits A and B, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of REI's capital investment in a Debtor.

110.　Upon information and belief, each of the transfers described in paragraphs 44 and 45 above, including transfers listed on Exhibit C, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of Esmerian's capital investment in a Debtor.

111.　Upon information and belief, each of the transfers described in paragraphs 46 through 55 above, including transfers listed on Exhibits D, E, F and G, was made on account of a debt allegedly owed by a Debtor or allegedly as a return of defendants' capital investment in a Debtor.

19

112.     Upon information and belief, the transfers described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C, D, E, F and G, was made on or within two years of the Petition Date.

113.     Upon information and belief, the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, were transfers of an interest of one or more of the Debtors in property.

114.     Upon information and belief, the Debtors received no consideration for any of the foregoing transfers.

115.     Upon information and belief, each of the transfers described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C, D, E, F and G, was a transfer of an interest of one or more of the Debtors in property for which each of the Debtors received less than a reasonably equivalent value in exchange for each such transfer.

116.     Each of the transfers described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C, D, E, F and G, was made by the Debtors on a date when the Debtor-transferor (i) was insolvent or became insolvent as a result of such transfer; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with such Debtor-transferor was an unreasonably small capital; (iii) intended to incur, or believed that such Debtor-transferor would incur, debts that would be beyond the Debtor-transferor's ability to pay as such debts matured; and/or (iv) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

117.     Defendants were the initial and/or immediate or mediate transferees of the transfers described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C,

D, E, F and G.

118. By virtue of the foregoing, pursuant to sections 548 and 550 of the Bankruptcy Code, the transfers described in paragraphs 38 through 55, including transfers listed on Exhibits A, B, C, D, E, F and G, should be avoided, recovered, and preserved for the benefit of the Debtors' estates.

119. Accordingly, plaintiff seeks judgment avoiding the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $35,911,335.40.

SIXTH CAUSE OF ACTION
Avoidance and Recovery of Postpetition
Transfers Under 11 U.S.C. §§ 549 and 550

120. Plaintiff repeats and realleges paragraphs 1 through 119 as if fully set forth herein.

121. Each of the transfers described in paragraphs 46 through 52, and paragraphs 56 through 60 above, including transfers listed on Exhibits D, E, F and H, occurred after the commencement of the Bankruptcy Cases.

122. Each of the transfers described in paragraphs 46 through 52, and paragraphs 56 through 60 above, including transfers listed on Exhibits D, E, F and H, were not authorized under the Bankruptcy Code or by the Court, and were made in contravention of the Cash Collateral Order and the Cash Management Order.

123. Defendants were the initial and/or immediate or mediate transferees of the transfers described in paragraphs 46 through 52, and paragraphs 56 through 60 above, including transfers listed on Exhibits D, E, F and H.

124.     By virtue of the foregoing, pursuant to sections 549(a) and 550 of the Bankruptcy Code, the transfers described in paragraphs 46 through 52, and paragraphs 56 through 60 above, including transfers listed on Exhibits D, E, F and H, should be avoided, recovered, and preserved for the benefit of the Debtors' estates.

125.     Accordingly, plaintiff seeks judgment avoiding the transfers described in paragraphs 46 through 52, and paragraphs 56 through 60 above, including transfers listed on Exhibits D, E, F, and H, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $23,342,361.00.

WHEREFORE, Plaintiff demands judgment against the Defendants:

(a)     on the First Cause of Action, a judgment avoiding each of the One-Year Insider Transfers, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $41,473,435.40;

(b)     on the Second Cause of Action, avoiding the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $35,911,335.40;

(c)     on the Third Cause of Action, avoiding the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $35,911,335.40;

(d)     on the Fourth Cause of Action, avoiding the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G,

and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $35,911,335.40;

(e)     on the Fifth Cause of Action, avoiding the transfers described in paragraphs 38 through 55 above, including transfers listed on Exhibits A, B, C, D, E, F and G, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $35,911,335.40;

(f)     on the Sixth Cause of Action, avoiding the transfers described in paragraphs 46 through 52, and paragraphs 56 through 60 above, including transfers listed on Exhibits D, E, F and H, and directing defendants to transfer to plaintiff the property transferred to them or the value thereof, in an amount to be determined at trial, but not less than $23,342,361.00; and

(g)     for such other and further relief, including interest, costs, disbursements and attorneys` fees, as the Court may deem just and proper.

Dated:  New York, New York
        April 15, 2010

                              LEVI LUBARSKY & FEIGENBAUM LLP


                              By:_____
                                  Howard B. Levi
                                  Gail R. Zweig
                              1185 Avenue of the Americas, 17th Floor
                              New York, New York  10036
                              (212) 308-6100

                              *Attorneys for Plaintiff FLHI Liquidation Trust*